Case No. 04-14-00483-CV

| | | |
|---|---|---|
| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S SUPPLEMENTAL MOTION FOR PANEL REHEARING

TO THE HONORABLE COURT:

Appellant Rowland J. Martin files this, his "Appellant's Supplemental Motion For Panel Rehearing," pursuant to the Texas Citizens Participation Act and Tex. R. App. P. 33.1, in support of which the following is shown:

### BACKGROUND

By this supplemental motion reserving all prior evidence, authorities, and special exceptions pursuant to Tex. R. Civ. P. 91, appellant enlarges his motion for rehearing on the third issue of his appeal to allege that that the trial court abused its discretion in neglecting to adjudicate certain fundamental jurisdictional defects in appellees' cause of action at the time it rendered its order denying TCPA dismissal relief. On rehearing, the Court is requested to enforce fundamental error doctrine as enunciated in *Ramsey v. Dunlop*, 146 Tex. 196, 205 S.W.2d 979 (1947). *See generally, Declaration of Rowland J. Martin, supra at p. 20.*

### SUPPLEMENTAL STATEMENT OF THE CASE

The grievance from appellant's original motion for rehearing is that appellees failed to produce transactional evidence disclosing the terms of the contract and specific identities of the seller and the buyer, and have repeatedly neglected to negate the specifically identified elements of the purchase money transaction that forms the basis of the lien claim noticed in the lis pendens

1

notice of record. *Coleman v. Prospere,* No. 05-13-00068-CV, 2014 WL 4672456 (Tex, App. - Dallas, 2014) (majority rejects multifarious briefing argument and reverses a no-evidence summary judgment).[1] As further noted in the original motion, the Court's existing judgment recognizes that appellant is the beneficiary of legal authority for a prima facie defense of privilege,[2] and has produced prima facie evidence supporting a justification based on the power to prosecute liens and reversionary interests in the subject property,[3] and the right to self-representation to resolve a dispute with a former attorney.[4]

The evidence ascertainable from the face of the Court's existing judgment preponderates against the ownership element of the appellees' cause of action, and this factor alone is indicative

---

[1]     Rehearing on the first issue is requested under *In re IH-10 Colony,* Case No. 01-14-00775-CV, 2014 WL 7914874 (Tex. App. – Houston, 2014), a case recognizing that TCPA automatic stay requirements are applicable to post-stay signings of trial court orders. Rehearing is requested on the second issue on the theory that appellees cause of action for tortious interference with contractual relations requests an ultra vires form of relief – in this case a temporary injunction authorizing prior restraints against future speech – therefore the action is nonjusticiable in nature no less so than the injunctive relief the Court describes as ultra vires in *Markel v. World Flight, Inc.,* 938 S.W.2d 74, 79-81 (Tex.App.-San Antonio 1996, no writ) (treating temporary injunction as unconstitutional prior restraint). Rehearing is requested on the third issue under the approach to the clear and specific evidence standard followed in *Rio Grande H2O Guardian v. Robert Muller Family Partnership, Ltd.,* No. 04-13-00441-CV, 2014 WL 309776 (Tex. App.—San Antonio January 29, 2014). The thrust of these cases is that appellant's lis pendens filings enabled contracting parties to exercise rights they already had.

[2]     Judgment at p. 11; *cf., Archer v. Blakemore,* 367 S.W. 402 (Tex. App. – Austin, 1963) (deed cancellation authorized to correct attorney's in-kind compensation at an exorbitant rate for legal services provided during attorney-client relationship), and *James, et al, v. Calkins,* 446 S.W.3d 135 (Tex. App. – Houston [1st Dist.] 2014),); and *Cherokee Water, Co. v Advance Oil & Gas, Co.,* 843 S.W. 2d 132, 135 (Tex. App. – Texarkana 1992, writ den'd) (no independent cause of action to enjoin lis pendens filing under Texas law;); see also, *La Jolla Group II, et al. v. Daniel A. Bruce, et al,* 211 Cal.App.4th 461 (Cal. App. 5th Dist. 2012.

[3]     Judgment at p. 3 (noting disclaimer of jurisdiction to enforce appellees' final motion for expunction of appellants notice of lis pendens); cf., *Anderson v. Law Firm of Shorty, Dooley & Hall,* 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010) (right of action for mal[practice not precluded under res judicata doctrine); see also, *La Chappelle v. Superior Court of Riverside County,* 2013 WL 1633657 (Cal. App. 4th Dist. 2013) (lis pendens case); and *Park 100 Investment Group v Ryan,* 180 Cal.App.4th 795 (Cal. App. 2nd Dist. 2009) (applying collateral estoppel doctrine in anti-SLAPP lis pendens case).

[4]     Judgment at p. 13 (noticing appellant's "Perfected Notice of Lis Pendens" as evidence for TCPA purposes); cf., *Ex parte Shaffer, 649 S.W.2d 300 (Tex. 1983); see also, Gulf Coast Investment Corp. v. Brown,* 821 S.W.2d 159 (Tex. 1991) (suit in a suit litigation arising from wrongful foreclosure by attorneys); and *In re Liberty Trust Co.,* 130 B.R. 467 (W.D. Tex. 1991) (undischarged attorney of record held accountable to client).

2

of the substantial insufficiency of the trial court's order denying dismissal relief. *Rio Grande H2O Guardian v. Robert Muller Family Partnership, Ltd.*, No. 04-13-00441-CV, 2014 WL 309776 (Tex. App.—San Antonio January 29, 2014). Out of an abundance of caution to establish that his entitlement to dismissal relief rest on preponderant evidence, however, appellant supplements the original motion to allege additional evidentiary factors bearing on the fundamental nature of the trial court's errors, and the viability of his original defenses of privilege and justification according to *HMC Hotels Properties II Ltd. Partnership v. Keystone-Texas Property Holding Corp.*, 439 S.W.3d 910, 917 (Tex. 2014).

, Independently and alternatively from appellants first and second issues in the original motion, the grievance of the supplemental motion addressing appellant's third issue is that appellees' litigation involves a time barred claim for tortious interference with contractual relations over four years after a constructive eviction from the subject property in connection with a post-petition foreclosure that was set aside by the bankruptcy court in May 2006.[5] No matter what label appellees claim to use to allege tort liability in 2014, the accrual in May 2006 of claims in their favor in *In re Moroco Ventures, .L.L.C.*, Bankruptcy Case No. 06-50829 (W.D. Tex. 2007), and the subsequent adjudication of those same claims in favor of the Chapter 11 debtor, bar claims for tort liability that expired in May 2010 which they could have brought in 2006. Under the circumstances, the argument can be made that the TCPA authorizes review for fundamental jurisdictional error, including judicial notice of deed record evidence involving appellee Bravenec's purported transaction with Torralba Properties on July 8, 2014. *Id.* Fundamental fairness under the TCPA also demands recognition of free speech interests in the

---

[5]    See Bravenec Admissions #13 and #14 in Defendant's Exhibit 16, Admissions By Defendant Edward Bravenec in Case No. SA 11-CV-414-HLH, March 27, 2011 (acknowledging foreclosure set aside by bankruptcy court); Vol 2 RR p. 23 at lines 19 and 20 (Bravenec: "I don't remember – I know we went to bankruptcy court. I can't say exactly."); see also, Order of Judge David Hittner in Exhibit B-1.

filing of the lis pendens notices in question, and due process interests in equal access to the judicial process of the state courts and freedom from undue prior restraints. *Cf., Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App. – Houston, [1st. Dist] rehearing overruled Sept. 18, 2014) (anti-slapp decision holding that attorney's statements were "matters of public concern" justifying TCPA motion to dismiss).

## THE FUNDAMENTAL JURISDICTIONAL ERROR

Appellant has good cause to believe that the TCPA can and should be read to authorize review for fundamental jurisdictional error. The TCPA is considered an anti-SLAPP law, designed to provide defendants in so-called SLAPP ("Strategic Lawsuits Against Public Participation") lawsuits the ability to have these suits dismissed early on. House Research Org., Bill Analysis, Tex. H.B. 2973, 82nd Leg, R.S. (2011); Senate Research Ctr., Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011). In 2013 the Texas Legislature amended the TCPA to incorporate automatic stay requirements and provisions for judicial review of defenses asserted by moving parties. See e,g., Tex. Civ Prac. & Rem Code, Sections 27.005(1)(a) and 51.014(a)(12). The courts of appeals assume that when enacting a statute, the Legislature is aware of the background law and acted with reference to it. *In re Allen*, 366 S.W.3d 696, 706 (Tex.2012). The ;legislative history here shows that the sponsors of the amendments, including Sen. Rodney Ellis,[6] gathered hearing testimony from several witnesses who considered it

---

[6]     One press account documented the following statement by a sponsor: "These SLAPP suits are the bully's weapon against democracy," said Sen. Rodney Ellis, D-Houston, one of the sponsors of the bill. "Across Texas and the nation, the powerful are using our courts — and the threat of high legal costs and bankruptcy — to silence critics and shield wrong-doers from scrutiny. HB 2973 evens the playing field and ensures the little guy won't be put in the poor house for standing up for what he believes in." http://farmingtonhills.legalexaminer.com/miscellaneous/loser-pays-governor-signs-antislapp-law-hypocrisy-in-action/

necessary to deter strategic litigation against public participation in response to speech about abusive real estate transactions.[7]

In theory, the process due at the time the trial court entered its order denying TCPA dismissal relief on July 9, 2014 and July 17, 2014 was action by that court to effect judicial implementation of the 2013 amendments to the TCPA. In practice, the trial court's process revived and broadened the split that the amendments were adopted to bridge. The trial court did this by abstaining from enforcement on the first prong of the TCPA's burden shifting procedure on July 9, 2014, and arguably by departing thereafter from compliance with automatic stay requirements on July 17, 2014. The error to implement the TCPA is fundamental in two important respects. First, the trial court's unqualified conclusion that appellant's motion to dismiss lacked merit adversely affects the interest of the public generally, as that interest is declared both by the TCPA, and by the Court's ruling on the first prong of the TCPA's burden shifting procedure. Second, the Bravenec admissions in *Martin v. Grehn* and the Torralba deed support important jurisdictional fact issues in regard to whether, as of July 8, 2014, appellees' had proper standing to invoke the trial court's jurisdiction. *Ramsey* justifies notice of these subissues because each one bear directly on whether the appellees satisfied the TCPA's clear and specific evidence standard, and tend to substantiate appellant's defenses in the trial court and in his appellate briefs that the trial court erred in denying TCPA dismissal relief.[8]

---

[7]     According to press reports, witnesses such as Attorney Laura Prather testified that the bill would create a mechanism to deter meritless lawsuits at the outset of a proceeding and would help alleviate burdens on the court system. Referring to one specific category of meritless lawsuits, Author Carla Main testified that a real estate developer filed half a dozen lawsuits naming her, her publisher and others as defendants, after she wrote a book about eminent domain. Janet Ahmad of San Antonio, president of Home Owners for Better Building, testified that KB Homes sued her for racketeering after she organized protests against the builder.

[8]     As a general rule, Tex. R. App. P. 38.1(h) requires that appellate briefs "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). While it is well settled that issues on appeal can be waived if an appellant fails

The filing of this supplemental motion also responds to a circumstantial disparity in treatment under the TCPA's rules of evidence that impairs appellant's ability to perfect the interlocutory appeal. See, Tex. Civ. Prac. & Rem. Code, Section 27.006(a). On one hand, in the Court's orders instructing appellant on the terms for filing his amended reply brief dated March 28, 2015, April 8, 2015, and May 11, 2015, the Court has previously declined to notice the Torralba deed evidence attesting to a purported transfer of the subject property, and for that reasons has not had the occasion to administer fundamental error doctrine. On the other hand, the Court's judgment sua sponte applies the TCPA rules of evidence to notice of appellees' motion for contempt as pleading evidence that supports their case on remand, though the motion for contempt was never considered on the merits at the hearing on July 9, 2014, and though the motion apparently involves evidence that the Court has generally declined to consider. The resulting disparity jeopardizes appellant's protected liberty and property interests in the specific context of appellees' attempts to prosecute issues about criminal contempt. See, Exhibit D-1.

The disadvantage from the latter disparity is greatly compounded by the Court's related decision to apply rules against multifarious briefs to exclude significant parts of appellant's opening and reply briefs. [9] In response to the judgment, appellant's original motion for rehearing takes exception to the styling of the judgment as an affirmance on the grounds that preponderant

---

to support his or her contentions by citations to authority, or presents a multifarious argument, *City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 555 n. 2 (Tex.App.-San Antonio 1993, writ denied), the right to de novo review should be protected where a litigant has good cause to claim substantive immunities that are consistent with the statutory scheme. *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004).

[9] Specifically, the judgment overruled appellant's first issue requesting enforcement of the TCPA's automatic stay based on its reading of rules of procedure in Tex. R. App. P. 27.1. . Judgment at p. 5. The Court overruled the second issue, noting among other things that reference to deed transfer from appellee Bravenec to Torralba Properties on July 8, 2014 "… relies on evidence outside our appellate record. This court may not consider matters outside the appellate record." Judgment at p.9, fn. 4. The Court overruled the third issue, despite ambiguities in appellees' brief that required the Court to speculate that "[t]he Property is owned by one or both appellees," based on its finding under the TCPA's second prong that appellees offered "clear and specific evidence to substantiate each element of their cause of action." Judgment at p. 9.

evidence of appellant's legal authority, power and right to engage in the filing of lis pendens notices is ascertainable from the face of the Court's judgment. Under the circumstances, a rehearing without reference to jurisdictional fact issues about the time barred status of the appellees' claim and about the Torrlaba deed does not afford appellant an adequate remedy at law. *Cf, In re IH-10 Colony, Id.*

## JURISDICTIONAL STANDARDS

Ordinarily, Texas appellate courts have jurisdiction only over final judgments. *Rusk State Hosp. v. Black*, 392 S.W. 3d 88 (Tex. 2010). A court of appeals has no discretion to declare the law on this point, for the same reason that a court of appeals has no authority to consider issues that fall outside the scope of subject matter that is statutorily authorized for interlocutory appeal, *In re Lipsky*, 411 S.W.3d 530 (Tex. App. – Fort Worth, 2013), and issues which have not properly been raised by the parties in accordance with the governing rules, *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex.2006).

At the same time, the appellate courts are under a statutory duty to effectuate the purposes of the TCPA statute in an interlocutory appeal from an order denying a covered motion to dismiss. *In re I-10 Colony, Id.* It is now well settled that the 2013 amendments to the TCPA provide for an interlocutory appeal from an order that denies a TCPA motion to dismiss. *Rio Grande H2O Guardian, Id.* The statutory provisions enacted in 2013 reflect the legislative intent to bridge a split in authority that had developed in the courts of appeals concerning whether a right of interlocutory appeal had been created by Section 27.008. *See e.g., Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *3 (Tex. App.—Austin Apr. 11, 2014), pet. for review granted in Case No. 13-0043 (Tex. January 9, 2014). Further, the TCPA specifically states that "[t]his chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common

7

law or rule provisions." Tex. Civ. Prac. & Rem, Code , Sec. 27.011. Thus, there is nothing in the statute's text or legislative history to indicate that the Legislature intended the 2013 amendments to preclude interlocutory review of fundamental jurisdictional errors. *Cf., In re I-10 Colony, Id.*

As a general rule, fundamental error exists in those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of Texas, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter. *Ramsey v. Dunlop, Id.* Since *Ramsey*, appellate courts have recognized fundamental error when the record shows on its face that the court lacked jurisdiction. *See McCauley v. Consolidated Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957)(per curiam) (concluding error is fundamental when the record shows a jurisdictional defect), and in a few other limited circumstances. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (holding that, to preserve issue for appellate review, including constitutional error, party must present to trial court timely request, motion, or objection, state specific grounds therefor, and obtain ruling). Included among the categories of subject matter that can be raised for the first time on appeal are incidental issues where the proponent of a "no evidence" cause of action fails to negate the specifically identified elements of the defendants party's defense or affirmative defense, *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951), and where a party's standing to invoke a trial court's jurisdiction is challenged, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445-46 (Tex. 1993),.

Regarding the matter of standing, it is beyond question that standing is an essential element of subject matter jurisdiction. *Tex. Ass'n of Bus., Id.* In Texas, the standing doctrine requires that (1) there be "a real controversy between the parties," and (2) that real controversy "will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson*

*County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App.-Fort Worth 2005, no pet.). *See also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707-08 (Tex. 2001) (analyzing standing in the context of asserted claim). Standing must exist at the time a plaintiff files suit; if the plaintiff lacks standing at the time of filing, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Doran v. ClubCorp USA, Inc.*, No. 05-06-01511-CV, 2008 WL 451879, at *2 (Tex. App.-Dallas Feb. 21, 2008, no pet.) (mem. op.); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703 (Tex. App.-Fort Worth 2006, pet. denied). Standing doctrine also requires a controversy to continue to exist between the parties at every stage of the legal proceedings, including the appeal. *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.-Dallas 2010, no pet.). In summary, the requirements for fundamental error review are arguably met where the subject matter of the alleged error satisfies *Ramsey's* common law criteria, subject to the requirement of a timely request, objection, or motion, and compliance with the rules of procedure and evidence for presentation of the error on appeal. *See, Coleman v. Prospere*, No. 05-13-00068-CV, 2014 WL 4672456 (Tex, App. - Dallas, 2014) (majority rejects application of rule against multifarious briefing argument and reverses a no-evidence summary judgment).

The process employed by the trial court broadened rather than bridged the split in authority that prompted the Legislature to enact the 2013 amendments. On guiding principles for the preservation of such errors, Tex. R. App. P. Rule 33.1 provides in pertinent part:

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:(1) the complaint was made to the trial court by a timely request, objection, or motion that:(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure.

Tex. R. App. P. 33.1, Id. Here, it leads to an unreasonable and absurd result to assume that the Legislature intended to exclude fundamental jurisdictional error from the categories of subject matter that qualify for interlocutory review pursuant Section 51.014(a)(12), or to conclude that appellant neglected to take steps to preserve the fundamental jurisdictional errors alleged.

Appellant raised timely constitutional and jurisdictional objections in the trial court which cited the risk that an abuse of the trial court's contempt process might occur, Vol 3 RR 4 - 6 and 11 – 13, and the trial court sustained the objection in part, and denied it in part by revising a part of the proposed terms of the temporary injunction order. Vol 3 RR 11 13 - 14. Appellant preserved error on the part of the order that overruled his objections in various notices and supplemental notices of appeal and in both amended appellate briefs. Under the circumstances, the rule against multifarious briefs is not the least restrictive alternative for orderly administration of TCPA legislative policy objectives. A multifarious brief by a moving party for TCPA relief should not absolve a culpable non-moving party to evade accountability. The least restrictive alternative for effectuating that purpose on the facts of this case, compared to the latter alternative, is to conduct de novo review of appellant's privilege and justification defenses on rehearing under the doctrine authorized in *Ramsey v. Dunlop, Id.,* and to take judicial notice of the Torralba deed as evidence justifying dismissal under *Rio Grande H2O Guardian, Id.* *Stanford v. Texas,* 379 U.S. 476 (1965).

10

## ARGUMENT AND AUTHORITIES

### A. The TCPA's First Prong: Fundamental Jurisdictional Errors Distorted The Trial Court's Notice Of Appellant's Exercise Of The Right To Free Speech

The trial court's error in administering the first prong of the TCPA's burden shifting procedure and the automatic stay requirements supports review on rehearing under *Ramsey*. Contrary to *Ramsey*, the trial court disposed of appellant's TCPA motion to dismiss, and granted appellees' motion for temporary injunction, without reference to guiding principles, *see In re IH-10 Colony, Id.*, and without reference to specifically identified facts in appellant's lis pendens notice showing an advance of $135,000 to Roy Ramspeck to enable Moroco Ventures, LLC to purchase the subject property for $384,500 in 2003, and without respect to the filing of lis pendens notices and similar documents expressing a viewpoint opposed to the federal district court's choice of law in *Martin v. Grhen.*[10]

On rehearing for fundamental error, appellant supplements the original motion to contest the trial court's deference to appellees' mischaracterization of dicta in *Martin v. Grehn*, et al, Case No. SA 11-CV-0414 (W.D. Tex. 2013), and related criticism toward the use of lis pendens filings to express viewpoints on matters of public concern. *Cf., Cortez v. Johnston*, 378 S.W.3d 468 (Tex. App.—Texarkana 2012, pet. denied) (conduct of the state judiciary constitutes a matter of public concern). The trial court's order denying TCPA dismissal relief, among other things, ignores the presence of a substantial and material TCPA fact issue about speech on fundamental matters of public concern. *Schimmel v. McGregor, Id.* In particular, the trial court's order poses a direct conflict with the statutory mandate of the Bankruptcy Abuse Prevention And

---

[10]     *But see, Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) ("To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged.") The governing law in this case is arguably *Larry York v. State of Texas*, 373 S.W. 3d 32 (Tex. 2012). Invoking state law on point in a lis pendens filing demonstrates the claimant's intent to enforce the applicable law, not an intent to engage in tortious conduct. *Cf., La Chappelle v. Superior Court of Riverside County, Id.* at fn. 2.

11

Consumer Protection Act (BAPCPA) directing the Small Business Administration to" study and report to Congress on: (1) the factors that cause small businesses to become debtors in bankruptcy; and (2) how Federal bankruptcy laws can be made more efficient in assisting small businesses to retain their viability." 11 US.C. 308. Section 308 defines appellant's speech in *Martin v. Grehn*, about bankruptcy conditions unfavorable to small business participation, as a matter of public concern *per se*. cf., *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (Fifth Circuit choice of law is nonbinding). According to *Farias v. Garza*, 426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed May 6, 2014), and persuasive authority in *Schimmel v. McGregor*, the construction most consistent with the TCPA's First Amendment rationale is one that treats the lis pendens filings in question as protected speech on a matter of public concern, as well as a privileged communication in a judicial proceeding covered by *James v. Caulkins, Id.*

**B.      The TCPA's Second Prong: Fundamental Jurisdictional Error Distorted The Trial Court's Notice of The Nonjusticiability Of The Appellees' Prima Facie Case**

The threshold requirements for applying *Ramsey* are met by appellant arguments under the TCPA's second prong. The TCPA directs the courts to inquire into "whether the record contains a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." *Rio Grande H2O Guardian, Id.* Appellant's assertion in the trial court and on appeal that the appellees' cause of action is functionally moot and insufficient under the clear and specific evidence standard, has direct support in the persuasive case law authority on point.

In *Alphonso v. Deshotel*, 417 S.W.3d 194, (Tex. App. – El Paso, 2013), a plaintiff contended that a defendant's statement about his role in an alleged misappropriation of funds was false. According to the plaintiff, the evidence of falsity consisted of affidavit evidence showing that he did not misappropriate the funds in question. The court of appeals concluded

12

that the dispositive factors were that the plaintiff's affidavit failed to deny the alleged misappropriation funds, and that a refusal to admit liability or wrongdoing for an act is not synonymous with the denial of the act's occurrence. *Id.* The court of appeals noted that because "a civil defendant enjoys the benefit of a presumption that he spoke the truth" in a defamation case, a non-movant must satisfy a heightened burden of proof under the clear and specific standard to prevent dismissal:.

> The requirement of convincing clarity reflects the [Legislature's] desire to protect defendants from being held liable on barely sufficient evidence and requires courts to resolve doubtful cases in favor of the defendants ... This is further reflected in the Legislature's pronouncement that the Act is to 'be construed liberally to effectuate its purpose and intent fully.' Tex. Civ. Prac. & Rem.Code Ann. § 27.011(b)(West Supp.2013). Alphonso's testimony is simply not enough to overcome this presumption and demonstrate by clear and specific evidence a prima facie case that Bishop Deshotel's statement is, in fact, false."

*Id.* (brackets in original). *Schimmel v. McGregor, Id.,* follows essentially the same reasoning.

The references to the fallacy of *ignoratio elenche* argument that the *Alphonso* court used to differentiate between an unqualified denial of responsibility for misappropriated funds, on one hand, and a settlement agreement with a sentence saying there was "no admission of any liability or wrongdoing," on the other, provides a fitting framework for analysis of appellee Bravenec's *ignoratio elenche* testimony in this case. Analogous to the presumption of truth in *Alphonso,* the facts here involve a privileged communication, as adjudged by the Court's original ruling, as to which Bravenec's *ignoratio elenche* testimony is "barely sufficient" and lacking in "convincing clarity" to demonstrate clear and specific evidence of a prima facie case.

Regarding appellees' first element, their entire cause of action – both as filed on May 13, 2014 and as amended on July 8, 2014 - is reviewable in substance as a claim for relief from a breach of second deed of trust covenants. It is clear from the case law authority on res judicata cited by appellees themselves that the expiration of the limitations period specified for the claim

13

that accrued in May 2010 bars any issue arising from the second deed of trust that appellees could have asserted following McKnight and Bravenec's foreclosure in May 2006 and following their constructive eviction from the property in 2006 by order of the bankruptcy court.

Regarding the second and third elements, Bravenec's testimony alleging conduct is inconsistent with federal court and probate court judgments have res judicata effect is also "barely sufficient" and lacking in "convincing clarity." In short, Bravenec failed to specifically allege the identity of the contracting parties by a preponderance of the evidence has potentially dispositive. As a result, it is not clear that the contract that was supposed to exist on May 13, 2014 is cognizable as evidence supporting the amended cause of action appellees filed on July 8, 2014; and the filing of the Torralba deed on July 8, 2014 is not specific evidence of a contract of sale sufficient to support the appellees' action at the time it was originally filed on May 13, 2014. Appellee motion for contempt is also unsupported by corroborating evidence for its assertion in paragraph 18 that "Rowland J. Martin Jr. violated the Temporary Restrinaing Order by filing a document with the Bexar County Clerk Deed records Office that relates to the Plaintiff's and the real property … " See, Exhibit D-1.

Regarding the fourth element, Appellees have also failed to prove by reference to Bravenec's testimony that the evidence of record negates the specifically identified elements of appellant's live purchase money lien claim. Similarly, the probate court's order on March 19, 2014 cannot be read as a final disposition of the purchase money interest appellant asserts as a putative judgment creditor of the appellees, since the probate court would have framed its ruling in terms of the absence a property interest held by the undersigned appellant, and not in terms of the absence of an ownership interest in the subject property held by the Estate of King, if the order was intended to preclude claims arising out of appellant's estate as a unliquidated judgment

14

creditor of the appellees. Obviously, the federal court's judgment cannot be read to have res judicata effect, if the court in question issued an order expressly declaring its lack of jurisdiction on the matter in controversy. Nonetheless, appellees relied exclusively, albeit erroneously, on Case No. SA 11 –CV- 0414 as the source of their evidence at the hearing on July 9, 2014. Vol 2. RR at p. 4 (exhibit lists).

The Torrabla deed directly aids the Court's TCPA jurisdiction to effectuate the purposes of the 20213 amendments in authorizing opportunities to secure a dismissal of SLAPP litigation in an interlocutory appeal. In obedience to the verbatim text of footnote 4 of the Court's existing judgment, appellant attaches overriding significance to the Court's use of a disjunctive clause with the word "or" to frame the finding that "[t]he Property is owned by one or both appellees." The use of a disjunctive clause in this context signifies that appellees' ownership interests in the subject property cannot be determined with clarity and specificity from the evidence of record. *See e.g. Vol 2 RR 11 lines 11 - 14* ("Mr. Deadman: I believe that it's One For Autism. Mr. Bravenec: "I think the guy's name is -- ") This material ambiguity in the text of the existing record is fully consistent with appellant's allegation that appellees failed to satisfy the clear and specific evidence standard. If Bravenec disclaimed ownership of the property on July 8, 2014 by filing the Torralba deed, it is not *clear* what controversy there could be involving him on July 9, 2014 to be determined by the orders and judgment his cause of action purports to request. And, if Bravenec no longer owned the property on July 9, 2014, there was no *specific* governmental interest of which he was an intended beneficiary with which to justify the imposition of prior restraints on future pre-trial speech as occurred on July 17, 2014.

Under the circumstances, the Court's use of a disjunctive clause to frame a core finding denotes that doubt exists about the meaning of Bravenec's testimony on the question of who has

15

the superior claim of ownership to the subject property. The 2013 amendments are designed to protect moving parties in borderline fact situations such as this. Applying the intent of the 2013 amendment, appellees lacked constitutional and prudential standing when they filed the case, and the ownership facts that have to be shown to sustain each element of their prima facie case are neither clear nor specific according to the verbatim text of the existing judgment. Therefore, appellees' evidence does not pass muster under *Alphonso v. Deshotel, Id.*

## C. The TCPA's Second Prong: Fundamental Jurisdictional Errors Distorted The Trial Court's Notice Of Appellant's Defenses Based On Privilege And Justification.

Lastly, the threshold requirements for applying *Ramsey* are met by the circumstances of the appeal relating specifically to appellant's defenses under the TCPA's second prong. Section 27.005(1)(a) requires a reviewing court to consider defenses asserted by a moving party. In *Rio Grande H2O Guardian*, the Court sustained a motion to dismiss where the appellant established prima facie legal authority, power and right to litigate the matters forming the basis of the controversy in that case. *Id.* This reasoning has direct bearing on the dispositive effect of the privilege and justification defenses that appellant asserted in the trial court and on appeal.

The Court's existing judgment, analogous to the ruling in *Rio Grande H2O Guardian,* correctly concludes that the judicial proceeding privilege extends to the filing of the lis pendens notices. On this point, Texas law holds that publications made in the course of judicial and quasi-judicial proceedings are absolutely privileged. Absolutely privileged "mean[s] that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Hernandez v. Hayes,* 931 S.W.2d 648, 650 (Tex. App. 1996, writ denied) (*citing James v. Brown,* 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Reagan v. Guardian Life Ins. Co.,* 166 S.W.2d 909, 912 (Tex. 1942)). It is said that the judicial proceedings privilege is "tantamount to immunity," and, where there is an absolute privilege, no civil action

16

in damages for oral or written communications will lie, "even though the language is false and uttered or published with express malice." *Id.*[11] The Texas Supreme Court explained the reason for this approach in *Kinney v. BCG Attorney Search, Inc., Case No. 13-0043, supra, at p. 17*: "Given the inherently contextual nature of [tortious] speech, even the most narrowly crafted of injunctions risks enjoining protected speech because the same statement made at a different time and in a different context may no longer be actionable. Untrue statements may later become true; unprivileged statements may later become privileged." *Id.*

The Court's existing judgment supports the application of the Kinney principle to appellant's prima facie justification defense. The Court's existing judgment states the conclusion of law that the U.S. District Court for the Western District of Texas lacked jurisdiction to issue a prior judgment precluding the assertion of lien interests in the subject property as a creditor of the Estate of King and of Moroco Ventures, LLC. Judgment at p. 11. The judgment notices Defendant's Exhibit #7 from the hearing on July 9, 2014, the "Perfected Notice Of Lis Pendens Regarding Purchase Money Lien Claims in Case No. 2014-CI-07664," as evidence bearing on the transactional justification for the lis pendens filing. Judgment at p. 3.[12] These aspects of the

---

[11] The scope of the absolute privilege extends to all statements made in the course of the proceeding, whether made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App. 2004, pet. denied); *Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex. App. 1991, writ denied). The privilege extends even to statements made in contemplation of, and preliminary to, judicial proceedings, *Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App. 2001, no pet.), and applies to out-of-court communications, as long as "the out-of-court communication ... bear[s] some relationship to the proceeding and [is] in furtherance of the attorney's representation." *Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 782 (Tex. App. 1994, writ granted).

[12] From the lis pendens evidence referenced in the Court's judgment, one can also ascertain with certainty the time of the purchase money transaction between appellant and the closing agents for Roy Ramspeck in 2003; the priority status accorded to the transaction over secondary lien interests due to appellant's privity with the seller Roy Ramspeck; the origin of the purchase money from appellant's personal estate; and the motivation for the transaction in shielding liabilities incurred by Moroco Ventures, LLC. Judgment at p. 15

Court's existing judgment are consistent with the law of the case. Prior to 2015, the U.S. District Court for the Southern District of Texas denied appellee Bravenec's motion to dismiss in *Martin v. Grehn* in 2011 in his order noticing Bravenec's constructive eviction in or about May 2006. See, Order of Judge David Hittner in Exhibit B-1. The U.S. Bankruptcy Court acknowledged appellant's purchase money line interest in 2012. Exhibit B-2. More recently, the 150th District Court upheld appellant's right to self-representation under *Ex parte Shaffer,* 649 S.W.2d 300 (Tex. 1983) in its order denying disqualification on May 7, 2015. Exhibit B-3. In summary, the judgment of this Court and the orders of other federal and state courts that form the law of the case, all essentially declare appellant's power to litigate as a creditor, as well as his right of action to litigate on the terms that were extended to the attorney in *Schimmel v. McGregor, Id.*

## PRAYER FOR RELIEF

The law of the case and the record evidence as described in the Court's existing judgment preponderate in favor of the conclusion that a fundamental jurisdictional error occurred both in law and in fact when the trial court refused to grant dismissal relief and enforce automatic stay requirements. The limitations period began to run in 2006 on the claim for tort liability that appellees assert here, and the filing of the Torralba deed on July 8, 2014 extinguished whatever standing remained in appellees to a claim tort liability on July 9, 2014. Applying strict scrutiny to appellant's lis pendens speech due to matters of public concern it implicates, a court can readily disregard allegations that appellant made threats in probate court to file new notices, and that the

---

In addition, appellant relies on pleading evidence tendered to the trial court on July 9, 2014 to contend that appellee Bravenec an interest in the subject property while representing appellant in Probate Case No. 2001-PC-1263, that Bravenec's law firm neglected to correct mistakes by a private tax collector, the Law Firm of Linebarger, Goggan, Blair and Sampson, prior to its withdrawal from the litigation in 2005, and that the value of the purchase money security interest appellees appropriated in 2006, by foreclosing a second lien against Moroco Ventures, LLC, far exceeds the value of the legal services they actually provided. *Cf., Avila v. Larrea,* 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied).

18

filing of a notice in the trial court's docket injured appellees, since both refer to the exercise of

the protected privileges noticed in the Court's existing judgment . *James v. Caulkins, Id.*

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief

in all things, for such other relief both in law and in equity as he may be justly entitled. Out of an

abundance of caution to perfect the TCPA's substantive immunities, the Court is specifically

requested to treat the instant supplemental motion as including a contingent request for further

proceedings on the Court's order of April 8, 2015, or alternatively, for treating the instant

interlocutory appeal as a contingent petition for leave to prosecute the requested relief through an

original proceeding for mandamus relief.

Dated: June 3 2015                                    Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## DECLARATION OF ROWLAND J. MARTIN

I, Rowland J. Martin, affirm under penalty of perjury that the following statements are true:

I affirm that Edward Bravenec conducted a post-petition foreclosure sale under a second deed of trust secured by the property known as 1216 West Ave., San Antonio, Texas, which was granted by Moroco Ventures, LLC in May of 2006. The Bankruptcy Court for the Western District of Texas set aside the sale by an order issued on or about June 19, 2006, thus constructively evicting McKnight and Bravenec in 2006. To the best of my knowledge, the limitations period for any tort claim they could assert arising out of the second deed of trust began to run in 2006. In fact, McKnight and Bravenec did assert claims for contempt against me arising out that event, but their motion for contempt was denied by the bankruptcy court, and they never appealed the denial to the Federal District Court.

I deny that I made threats to engaged in tortious conduct in the Bexar County Probate Court #1 on March 19, 2014. The statement that I specifically recall making was to the effect that Bravenec's motion to expunge referenced only the notice of lis pendens that I filed on December 3, 2013. The probate court's order purports to expunge two notices, including one that was not referenced to the best of my knowledge in Bravenec's motion.

I deny that I filed a notice of lis pendens in Bexar County Deed Records after the 150th District Court entered its Temporary Restraining Order on May 13, 2014. The lis pendens I filed after May 13, 2014 was in the docket of the Case No. 2014-CI-07644.

Lastly, I deny that I was aware of the identity of Torralba Properties as the transferee of record of the subject property according to the deed filed on July 8, 2014.

Dated: June 3, 2015

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

20

## CERTIFICATE OF SERVICE

I mailed a copy of this "Appellant's Supplemental Motion For Rehearing," to Attorney

Glenn Deadman on June 3, 2015.

_____
Rowland J. Martin

## EXHIBITS

A-1    Order On Motion To Dismiss in Case No. 2014-CI-07644

A-2    Legislative History of the TCPA's 2013 Amendments

B-1    Order Denying Defendant's Motion To Dismiss of U.S. District Judge David Hittner in Case No. SA 11 – CV- 0414 .

B-2    Amended Order Reopening Bankruptcy Case in Bankruptcy Case No. 06-80116

B-3    Order Denying Motion For Disqualification in 150th District Court Case No. 2015-CI-04779

C-1    Defendant Edward Bravenec's Responses To Requests For Admissions dated March 27, 2011 in Case No. SA 11 – CV- 0414

C-2    Temporary Restraining Order dated May 13, 2014 in Case No. 2014-CI-07644

D-1    Motion For Enforcement And Contempt dated June 11, 2014 in Case No. 2014-CI-07644

D-2    Warranty Deed With Vendor's Lien dated July 8, 2014

D-3    Temporary Injunction Order dated July 17, 2014 in Case No. 2014-CI-07644

# A

CAUSE NO: 2014-CI-07644

| | | |
|---|---|---|
| EDWARD BRAVENEC AND 1216 WEST AVE., INC. | § § § | IN THE DISTRICT COURT |
| VS. | § § § | 285TH JUDICIAL DISTRICT |
| ROWLAND MARTIN, JR. | § § § | BEXAR COUNTY, TEXAS |
| ROWLAND MARTIN, JR. | § § | |
| VS. | § § | |
| EDWARD BRAVENEC, AND THE LAW OFFICE OF MCKNIGHT AND BRAVENEC | § § § | |

## ORDER ON MOTION TO DISMISS

On the 9th day of July 2014 came on to be heard the Motion to Dismiss filed by Rowland

J Martin, Jr. After hearing the evidence and argument of counsel this court finds the Motion is

without merit.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss

filed by Rowland J. Martin Jr is DENIED.

SIGNED this 17 day of ___July___, 2014.

Honorable Judge Solomon Casseb III

# B

# BILL ANALYSIS

Senate Research Center                                                                      H.B. 2973
82R18255 CAE-D                                                        By: Hunter et al. (Ellis)
                                                                                         State Affairs
                                                                                           5/10/2011
                                                                                         Engrossed

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

Citizen participation is the heart of our democracy. Whether petitioning the government, writing a traditional news article, or commenting on the quality of a business, involvement of citizens in the exchange of idea benefits our society.

Yet frivolous lawsuits aimed at silencing those involved in these activities are becoming more common, and are a threat to the growth of our democracy. The Internet age has created a more permanent and searchable record of public participation as citizen participation in democracy grows through self-publishing, citizen journalism, and other forms of speech. Unfortunately, abuses of the legal system, aimed at silencing these citizens, have also grown. These lawsuits are called Strategic Lawsuits Against Public Participation or "SLAAP" suits.

Twenty-seven states and the District of Columbia have passed similar acts, most commonly known as either "Anti-SLAPP" laws or "Citizen Participation Acts" that allow defendants in such cases to dismiss cases earlier than would otherwise be possible, thus limiting the costs and fees. The Texas Citizen Participation Act would allow defendants—who are sued as a result of exercising their right to free speech or their right to petition the government—to file a motion to dismiss the suit, at which point the plaintiff would be required to show by clear and specific evidence that he had a genuine case for each essential element of the claim. In addition, if the motion to dismiss is granted, the plaintiff who has wrongly brought the lawsuit may be required to pay attorney's fees of the defendant.

H.B. 2973 amends current law relating to encouraging public participation by citizens by protecting a person's right to petition, right of free speech, and right of association from meritless lawsuits arising from actions taken in furtherance of those rights.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1. Authorizes this Act to be cited as the Citizens Participation Act.

SECTION 2. Amends Subtitle B, Title 2, Civil Practice and Remedies Code, by adding Chapter 27, as follows:

### CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS

Sec. 27.001. DEFINITIONS. Defines, in this chapter, "communication", "exercise of the right of association," "exercise of the right of free speech," "exercise of the right to petition," "governmental proceeding," "legal action," "matter of public concern," "official proceeding," and "public servant."

Sec. 27.002. PURPOSE. (a) Provides that the purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate feely,

and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

Sec. 27.003. MOTION TO DISMISS. (a) Authorizes a party, if a legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, right to petition, or right of association, to file a motion to dismiss the legal action.

(b) Requires that a motion to dismiss a legal action under this section be filed not later than the 60th day after the date of service of the legal action. Authorizes the court to extend the time to file a motion under this section on a showing of good cause.

(c) Provides that except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

Sec. 27.004. HEARING. Requires that a hearing on a motion under Section 27.003 be set not later than the 30th day after the date of service of the motion unless the docket conditions of the court require a later hearing.

Sec. 27.005. RULING. (a) Requires the court to rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b) Requires a court, except as provided by Subsection (c), on the motion of a party under Section 27.003, to dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

(1) the right of free speech;

(2) the right to petition; or

(3) the right of association.

(c) Prohibits the court from dismissing a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

Sec. 27.006. EVIDENCE. (a) Requires the court, in determining whether a legal action should be dismissed under this chapter, to consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

(b) Authorizes the court, on a motion by a party or on the court's own motion and on a showing of a good cause, to allow specified and limited discovery relevant to the motion.

Sec. 27.007. ADDITIONAL FINDINGS. (a) Requires the court, at the request of a party making a motion under Section 27.003, to issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

(b) Requires the court to issue findings under Subsection (a) not later than the 30th day after the date a request under that subsection is made.

Sec. 27.008. APPEAL. (a) Provides that if a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) Requires an appellate court to expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) Requires that an appeal or other writ under this section be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

Sec. 27.009. DAMAGES AND COSTS. (a) Requires the court, if the court orders dismissal of a legal action under this chapter, to award to the moving party:

(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action; and

(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b) Authorizes the court, if the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, to award court costs and reasonable attorney's fees to the responding party.

Sec. 27.010. EXEMPTIONS. (a) Provides that this chapter does not apply to an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney.

(b) Provides that this chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

(c) Provides that this chapter does not apply to a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action.

Sec. 27.011. CONSTRUCTION. (a) Provides that this chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.

(b) Requires that this chapter be construed liberally to effectuate its purpose and intent fully.

SECTION 3. Makes application of this Act prospective.

SECTION 4. Effective date: upon passage or September 1, 2011.

SUBJECT:      Dismissing SLAPP suits on free speech, petition, and assembly grounds

COMMITTEE:    Judiciary and Civil Jurisprudence — committee substitute recommended

VOTE:         10 ayes — Jackson, Lewis, Bohac, Castro, S. Davis, Hartnett, Madden, Raymond, Scott, Thompson

                 0 nays

                 1 absent — Woolley

WITNESSES:    For — Shane Fitzgerald and Laura Prather, Freedom of Information Foundation of Texas; Joe Ellis and Laura Prather, Texas Association of Broadcasters; Laura Prather, Better Business Bureau and Texas Daily Newspaper Association; Janet Ahmad, HomeOwners for Better Building; Robin Lent, Coalition of HOA Reform; Carla Main; Brenda Johnson; (*Registered, but did not testify:* Keith Elkins, Freedom of Information Foundation of Texas; Mike Hull, Texans for Lawsuit Reform; Frank Knaack, ACLU of Texas; Arif Panju, Institute for Justice; Michael Schneider, Texas Association of Broadcasters; Tom "Smitty" Smith, Public Citizen; Ed Sterling and Doug Toney, Texas Press Association; Doug Toney, Texas Daily Newspaper Association; David Weinberg, Texas League of Conservation Voters; Ware Wendell, Texas Watch; Andy Wilson, Public Citizen, Inc.; Monty Wynn, Texas Municipal League; Irene Adolph, Coalition of HOA Reform, hoadata.org; Lou Ann Anderson; Mary Lou Durham)

              Against — None

              On — Steve Harrison, Texas Trial Lawyers Association

DIGEST:       CSHB 2973 would allow a party to file a motion to dismiss if a lawsuit were based on that party's exercise of the right of free speech, right to petition, or right of association. On the filing of a motion to dismiss, all discovery would be suspended until the court ruled on the motion. The court could allow specified and limited discovery on a motion by a party or on the court's own motion and on a showing of good cause.

A court would be required to grant the motion to dismiss if the moving party showed by a preponderance of the evidence that the lawsuit was based on, related to, or was in response to the party's exercise of the right of free speech, petition, or association. A court could not grant the motion to dismiss if the plaintiff established by clear and specific evidence a prima facie case for each essential element of the claim.

If the court granted the motion to dismiss, the court would be required to award to the moving party:

- court costs, reasonable attorney's fees, and other expenses incurred in defending the lawsuit; and
- sanctions against the plaintiff to deter similar actions.

If the court found the motion to dismiss was frivolous or solely intended to delay, the court could award court costs and reasonable attorney's fees to the responding party.

The motion to dismiss would have to be filed within 60 days after service of process. The deadline could be extended by the court on a showing of good cause. A hearing on a motion to dismiss would have to be set by 30 days after the date of service of the motion, unless docket conditions required a later hearing. The court would be required to rule on the motion to dismiss by 30 days after the hearing.

The bill would provide for expedited appeal of the motion to dismiss. An appeal would have to be filed within 60 days after the order was signed or the motion was denied by operation of law.

The bill would not apply to enforcement actions by the state or a political subdivision, a lawsuit against a person primarily engaged in selling or leasing goods or services when the intended audience was a customer, or a personal injury suit.

At the request of a party filing a motion to dismiss, the court would be required to issue findings regarding whether the lawsuit was brought to deter or prevent the moving party from exercising constitutional rights and was brought for an improper purpose, including to harass, cause unnecessary delay, or increase litigation costs.

The bill would take immediate effect if finally passed by a two-thirds record vote of the membership of each house. Otherwise, it would take effect September 1, 2011. The bill would apply only to a legal action filed on or after the effective date.

SUPPORTERS
SAY:

CSHB 2973 would allow a person to file a motion to dismiss if a lawsuit was based on that person's exercise of the right of free speech, petition, or association. Citizen participation benefits society, whether it comes in the form of petitioning the government, writing a news article or blog post, or commenting on the quality of a business.

"SLAPP" suits, or strategic lawsuits against public participation, are frivolous lawsuits aimed at silencing people involved in these forms of citizen participation. In one case, a woman who complained to the Texas State Board of Medical Examiners about a doctor and later complained to a television station was sued by the doctor. The suit eventually was dismissed, but the television station was forced to pay $100,000 in legal expenses. SLAPP suits chill public debate because they cost money to defend, even if the person being sued was speaking the truth. These suits are particularly problematic for independent voices that are not part of a news or media company. SLAPP suits are becoming more common, in part because the Internet has created a searchable record of public participation.

Under current law, the victim of a SLAPP suit must rely on a motion for summary judgment. While summary judgment disposes of a controversy before a trial, both parties still must conduct expensive discovery. By allowing a motion to dismiss, CSHB 2973 would allow frivolous lawsuits to be dismissed at the outset of the proceeding, promoting the constitutional rights of citizens and helping to alleviate some of the burden on the court system.

Anti-SLAPP legislation similar to this bill has been passed by 27 states and the District of Columbia.

OPPONENTS
SAY:

HB 2973, if interpreted broadly, could be used to intimidate legitimate plaintiffs. It could stifle suits brought legitimately under libel or slander laws because the plaintiff in such suits would have to overcome motions testing its pleadings.

The Senate companion bill contains language that would limit court costs, attorney fees, and other expenses "as justice and equity may require." This language should be added to the House bill to ensure a court could award attorney fees that were lower than what the attorney typically charges, if appropriate.

NOTES:

The companion bill, SB 1565 by Ellis, was reported favorably, as substituted, by the Senate State Affairs Committee on April 13.

C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROWLAND J. MARTIN, JR. SUCCESSOR IN INTEREST TO MOROCO VENTURES, LLC<br><br>Plaintiff,<br><br>v.<br><br>CHARLES GREHN, RELIANT FINANCIAL, INC., EDWARD BRAVENEC, ESQ., THE LAW OFFICE OF MCKNIGHT AND BRAVENEC, *and* 1216 WEST AVE., INC.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. H-10-3644 |

## ORDER

Pending before the Court is Defendant Edward Bravenec's Motion to Transfer Venue, Motion to Dismiss for Lack of Subject-Matter Jurisdiction, General Denial, Specific Denials, and Motion for Protective Order (Document No. 9). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Rowland J. Martin, Jr. ("Martin") brings this suit as successor in interest to Moroco Ventures, Inc. ("Moroco") challenging the October 3, 2006 foreclosure of Moroco's real property located at 1216 West Avenue in San Antonio,

14-50093.724

Texas (the "Property"). Martin alleges Defendants Edward Bravenec ("Bravenec") and the Law Office of McKnight and Bravenec (collectively, "Bravenec's Firm"), second lien holders on the Property and Martin's former attorneys, improperly foreclosed on the Property. Martin further alleges Defendants Reliant Financial, Inc. ("Reliant") and Charles Grehn ("Grehn") (collectively, "Reliant"), both former first lien holders on the Property, allegedly committed acts of prohibited trade practices, fraud, and fraudulent transfers for its collection efforts prior to the challenged October 3, 2006 foreclosure. The relevant facts leading up to Martin's lawsuit are as follows. On October 31, 2003, Moroco executed a deed of trust on the Property in favor of Roy M. Ramspeck and Annette G. Hanson (the "Grantees") to secure payment of a note in the amount of $145,000.00. On June 21, 2004, the Grantees assigned their rights and interests under the note and deed of trust to Reliant. Thereafter, Reliant's servicing agent, Aegis Mortgage Corporation ("Aegis"), began servicing the note. On July 26, 2004, Reliant assigned its rights and interests under the note and deed of trust to Bernhardt Properties I, Ltd. ("Bernhardt"), a nonparty to this suit. Despite Reliant's assignment to Bernhardt, Aegis continued servicing the note.

On May 3, 2005, Moroco executed a second deed of trust on the Property in favor of Bravenec to secure payment of a second note in the amount of $20,000.00.

2

When Moroco defaulted on the second note, Bravenec commenced foreclosure proceedings. On May 2, 2006, a substitute trustee held a public sale, and Bravenec was the successful bidder. On this same day, Moroco filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. On June 20, 2006, the bankruptcy court ordered the May 2, 2006 foreclosure sale void and declared that Moroco held title to the Property.

Shortly thereafter, Aegis, as a named secured creditor in Moroco's bankruptcy suit, filed a Motion for Relief from the Automatic Stay. On July 31, 2006, the bankruptcy court signed an "Agreed Order" stating that the automatic stay would remain in effect but that Moroco should continue making monthly payments to Aegis or the Property would be subject to foreclosure without further notice or action by the bankruptcy court. On August 16, 2006, Aegis, pursuant to the Agreed Order, filed a Notice of Termination of the Automatic Stay with the bankruptcy court stating that Moroco was in default of the first lien note. Thereafter, Reliant commenced foreclosure proceedings on the Property. Reliant's substitute trustee issued a notice of public foreclosure scheduled for October 3, 2006.

On October 2, 2006, Bravenec filed suit in the 57th Judicial District Court of Bexar County, Texas to prevent Reliant from moving forward with the October 3, 2006 foreclosure sale. Bravenec then acquired Reliant's first lien interest and

3

14-50093.726

proceeded in place of Reliant at the October 3, 2006 foreclosure sale. Bravenec again was the successful bidder at the sale. A substitute trustee's deed was issued to this effect and subsequently recorded.

On October 13, 2006, Martin filed a third-party petition and application for a temporary restraining order in the 57th Judicial District Court challenging the October 3, 2006 foreclosure sale and asserting claims for wrongful foreclosure and other prohibited transactions. On October 30, 2006, after hearing argument, the presiding Bexar County judge denied Martin's application for temporary restraining order and declared the October 3, 2006 foreclosure sale valid.

Now in federal court, Martin claims Defendants engaged in numerous irregularities relating to Moroco's bankruptcy proceedings and the October 3, 2006 foreclosure sale. Martin asserts the following mixed bag of claims: (1) common law fraud; (2) fraudulent breach of legal and financial fiduciary duties; (3) violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692E; (4) violations of his civil rights under the Civil Rights Act, 42 U.S.C. § 1983; (5) violations of the Clayton Anti-Trust Act, 15 U.S.C. § 1; (6) violations of the Sherman Anti-Trust Act, 18 U.S.C. § 1962(c); (7) declaratory judgment on suit in trespass to try title; (8) injunctive relief to enjoin Defendants' unlawful acts; and (9) negligent infliction of emotional distress.

4

14-50093.727

Bravenec moves in the alternative for transfer of venue under 28 U.S.C. § 1404, for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, or for a protective order.[1]  With respect to transfer, Bravenec contends that three of the five defendants—Bravenec, Bravenec's Firm, and the Property—reside in San Antonio.  Bravenec contends that Martin and potential witnesses also reside in San Antonio.  Thus, Bravenec argues it would be more convenient for the parties and witnesses and in the interest of justice for this case to be heard in the Western District of Texas, San Antonio Division.  Reliant opposes transfer and Martin does not respond.  For the reasons provided below, the Court

---

[1] Bravenec's grounds for lack of subject-matter jurisdiction and for a protective order are not persuasive, and his motion is denied on those points.  The Court notes that Reliant also moves to dismiss for lack of subject-matter jurisdiction in a separate motion, Document No. 18, not ruled on by the Court.  There, Reliant argues that because Martin never held legal title to the Property, he lacks standing to sue as successor in interest to Moroco.  While Reliant articulates the constitutional elements of Article III standing—injury-in-fact, causation, and redressability—Reliant offers no argument and no authority that Martin actually lacks Article III standing.  Rather, Relaint's argument relies on Texas case law holding that a shareholder lacks standing to pursue the corporation's cause of action.  *See, e.g.*, *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  Reliant's challenge is construed in actuality as an objection to the prudential limitations on the Court's exercise of federal jurisdiction.  *See, e.g.*, *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319–21 (5th Cir. 1999).  Prudential limitations are distinct from the Article III standing requirements and are governed under Rule 17 of the Federal Rule of Civil Procedure concerning real parties in interest.  *Id.*  Even assuming for the sake of argument that Moroco is the proper real-party-in-interest plaintiff, the Court has serious doubts as to whether Moroco continues to exist as an active Texas corporation given that its charter was forfeited by the Texas Secretary of State over three years ago.  *See* TEX. BUS. & ORG. CODE §§ 11.001(4)(A)– (5), 11.356(a)(3).

5

14-50093.728

finds transfer is warranted.

## II. LAW & ANALYSIS

A motion to transfer venue from one federal district court to another is within the transferor court's sound discretion. 28 U.S.C. § 1404(a); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). Transfer of venue is only appropriate if a two-part test is satisfied. First, this Court, as the transferor court, must determine if the action might have been brought in the transferee court. *See* 28 U.S.C. § 1404(a); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Second, this Court, as the transferor court, must ascertain whether transfer is for the convenience of the parties and witnesses and in the interest of justice. *Id.* Under § 1404(a), the movant carries the burden of persuading a court that transfer of venue is warranted. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). To prevail, the moving party must show that "the balance of convenience and justice weighs heavily in favor of the transfer." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994) (Crone, J.). Thus, the Court must determine if transferring venue would make it "substantially more convenient for the parties to litigate the case." *See id.*

When evaluating whether transfer is in the interest of justice and for the

14-50093.729

convenience of parties and witnesses, "convenience" depends on private and public interest factors, none of which is given dispositive weight. *In re Volkswagen AG*, 371 F.3d at 203. Courts consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6). The public interest factors encompass: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. *Id.* These factors are neither exhaustive or exclusive, nor is any one factor dispositive on the issue of transfer. *Gapp v. Linde Gas N. Am., LLC*, Civil Action No. H-10-4642, 2011 WL 1770837, at *2 (S.D. Tex. May 9, 2011) (Atlas, J.) (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

A.    *Whether this case might have been brought in the Western District of Texas.*

The Court finds jurisdiction and venue are proper in the Western District of Texas, San Antonio Division. Martin asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692E, the Civil Rights Act, 42 U.S.C. § 1983, the Clayton

7

14-50093.730

Anti-Trust Act, 15 U.S.C. § 1,[2] and the Sherman Anti-Trust Act, 18 U.S.C. 1962(c),[3] and therefore invokes federal question jurisdiction under 28 U.S.C. § 1331. The location of the Property underlying the basis of Martin's claims, as well as three of the five named defendants, reside in San Antonio.[4] Moreover, all of Martin's allegations concerning the events giving rise to his claims occurred in San Antonio. Thus, Martin's suit could have been brought in the Western District of Texas, San Antonio Division. *See* 28 U.S.C. § 1391 ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ."). Having determined the first prerequisite to transferring venue is satisfied, the Court next weighs the private and public interest factors to determine whether transfer would be for the convenience of the parties and

---

[2] In Martin's Original Complaint under the heading, "FIFTH CLAIM FOR RELIEF," Martin identifies the Clayton Anti-Trust Act, yet he cites the statutory reference 15 U.S.C. § 1, which in actuality is the Sherman Act.

[3] In Martin's Original Complaint under the heading, "SIXTH CLAIM FOR RELIEF," Martin identifies the Sherman Anti-Trust Act, yet he cites the statutory reference 18 U.S.C. 1962(c), which in actuality is the Racketeer Influenced and Corrupt Organizations Act (RICO).

[4] Bravenec, Bravenec's Firm, and the Property all reside in San Antonio, Texas. Reliant and Grehn reside in Harris County, Texas.

8

14-50093.731

witnesses, and in the interest of justice.

B.    *Whether transfer is for the convenience of the parties and witnesses, and in the interest of justice.*

1.    *Private interest factors*

The private interest factors weigh in favor of transfer. First, Martin, Bravenec, Bravenec's Firm, and the Property are all situated in San Antonio. Second, Martin's allegations complain of events that occurred in San Antonio. Third, Neither Martin nor Defendants have named any witnesses who might testify, but given the location of the alleged events, its likely that any potential witnesses will reside in San Antonio. Fourth, Most, if not all, of the relevant documents, including filed deeds of trusts, state-court filings and orders, and bankruptcy court filings and orders, are in San Antonio. Finally, while Reliant contends transferring this case would impose a burden on it and Grehn, Reliant does not appear to have encountered any inconveniences while participating in Moroco's bankruptcy proceedings, conducting foreclosure proceedings on the Property, or defending against Brevenec's state-court action to prevent Reliant from moving forward with the October 3, 2006 foreclosure sale, all of which occurred in San Antonio. Thus, the Court concludes that the general consideration of convenience for the parties, witnesses, and the overall efficiency of the case, would be better served by trial in the Western District of Texas.

9

14-50093.732

## 2.   *Public interest factors*

The public interest factors are neutral in the Court's analysis. First, none of the parties have presented any evidence or statistics that the Western District of Texas's court congestion is greater than this Court. Second, the Western District of Texas has no apparent "localized interest" in resolving this case. Third, the Western District of Texas is well-equipped to apply the federal and state laws that govern this case. And finally, the Court finds this case does not require resolving problems in conflicts of law nor the application of foreign law. Accordingly, the public interest factors add no weight to the balance favoring transfer.

## III.  CONCLUSION

Having considered the private and public interest factors, the Court determines that on balance, these factors weight in favor of transfer to the Western District of Texas, San Antonio Division. Accordingly, the Court hereby

ORDERS that Defendant Edward Bravenec's Motion to Transfer Venue, Motion to Dismiss for Lack of Subject-Matter Jurisdiction, General Denial, Specific Denials, and Motion for Protective Order (Document No. 9) is GRANTED IN PART and DENIED IN PART. The Court further

ORDERS that this case is hereby TRANSFERRED to the United States District Court for the Western District of Texas, San Antonio Division. The Court further

14-50093.733

ORDERS that Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion for Protective Order are DENIED.

SIGNED at Houston, Texas, on this __19__ day of May, 2011.

DAVID HITTNER
United States District Judge

11

14-50093.734

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROWLAND J. MARTIN, JR.      §
SUCCESSOR IN INTEREST TO    §
MOROCO VENTURES, LLC       §
                               §
      Plaintiff,             §
                               §
v.                              §     Civil Action No. H-10-3644
                               §
CHARLES GREHN, RELIANT    §
FINANCIAL, INC., EDWARD     §
BRAVENEC, ESQ., THE LAW     §
OFFICE OF MCKNIGHT AND    §
BRAVENEC, *and* 1216 WEST     §
AVE., INC.,                 §
                               §
      Defendants.        §

## ORDER

Pending before the Court is Defendant Edward Bravenec's Motion to Transfer Venue, Motion to Dismiss for Lack of Subject-Matter Jurisdiction, General Denial, Specific Denials, and Motion for Protective Order (Document No. 9). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Rowland J. Martin, Jr. ("Martin") brings this suit as successor in interest to Moroco Ventures, Inc. ("Moroco") challenging the October 3, 2006 foreclosure of Moroco's real property located at 1216 West Avenue in San Antonio,

14-50093.735

The clerk shall file this order in the main bankruptcy case as well as
in this adversary proceeding.



## SO ORDERED.

### SIGNED this 10th day of August, 2012.

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

IN THE U.S. BANKRUPTCY COURT
FOR THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Rowland J. Martin<br>Plaintiff | ) ) ) | Adversary Case 11-05141-LMC |
| v. | ) ) | |
| Edward Bravenec<br>Defendant | ) ) ) | |
| In Re ROWLAND J. MARTIN, JR.,<br>DEBTOR | ) ) | Case No. 05-80116-LMC |

### AMENDED ORDER REOPENING BANKRUPTCY CASE NO. 05-80116-LMC

The Court, having considered *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* finds that the post-petition foreclosure of involving the property at 1216 West Ave., in San Antonio, Texas, an asset of the Chapter 11 estate in Bankruptcy Case 06-50829 on October 3, 2006, is subject to this Court's *in custodio legis* authority

A TRUE COPY, I CERTIFY

under <u>Bustamonte v. Cueva</u>, 2004, 371 F.3d 232, rehearing denied U.S. App. LEXIS 11719 (5th Cir. Tex., June 14, 2004) *cited in* <u>Ashley Place, Inc. v. Nicholson</u>, 2007 U.S. Dist. LEXIS 24801 (W.D. Tex. 2007) (Civil Action No. SA-06-CV-999-XR), and that the Debtor has demonstrated standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC. Therefore, the Court finds that the Debtor's motion for further proceeding in the above Adversary Case 11-05141-LMC should be **GRANTED** in part, and designated for hearing in part, pursuant to Bankruptcy Code Sections 105, 362, and 542. **IT IS THEREFORE,**

**ORDERED,** *"Debtor's Motion For Relief From The Bankruptcy Court's Order Of July 28, 2011 And To Compel Turnover Of Assets,"* is hereby granted in part to authorize *nunc pro tunc* relief from the Court's Order of July 28, 2011 in Bankruptcy Case No. 05-80116-LMC, and

**IT IS FURTHER ORDERED,** that the Debtor is authorized to prosecute turnover relief in the above Adversary Case Adversary Case 11-05141-LMC, based on his standing as a purchase money creditor of former Debtor in Possession Moroco Ventures, LLC, and that Edward Bravenec, 1216 West Ave., Inc., Bailey Street Properties, Inc., the Law Office of McKnight and Bravenec, and the Law Firm of Hughes Watters Askanase are designated as Respondents and Defendants in this matter.

###

| ADMINISTRATOR FOR THE ESTATE OF KING, | § | IN THE DISTRICT COURT |
| | § | |
| Petitioner | § | |
| VS. | § | |
| | § | |
| | § | 150th JUDICIAL DISTRICT |
| BEXAR COUNTY, CITY OF SAN | § | |
| ANTONIO AND SAN ANTONIO | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| Respondents | § | BEXAR COUNTY, TEXAS |

## ORDER DENYING RESPONDENTS' MOTION TO DISQUALIFYING ROWLAND J. MARTIN, JR., TO APPEAR PRO SE FOR THE ESTATE OF JOHNNIE MAE KING

Be it remembered that on the ___30___ day of April, 2015 came on to be heard Respondent's Motion to Disqualify Rowland J. Martin, Jr., To Appear Pro Se for the Estate of Johnnie Mae King. After considering the Motion and pleadings on file, as well as all of the evidence and arguments of counsel for Respondents and Petitioner, the Court finds that said Motion should be denied.

IT IS THEREFORE ORDERED that Respondents' Motion to Disqualify Rowland J. Martin, Jr., To Appear Pro Se for the Estate of Johnnie Mae King. Is hereby, in all things, denied.

SIGNED AND ENTERED this ___30___ day of April, 2015.


_____
JUDGE PRESIDING

# D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROWLAND J. MARTIN, JR.,<br>PLAINTIFF | §<br>§<br>§ | CIVIL CASE NO. H-10-3644 |
| V. | §<br>§ | |
| CHARLES GREHN, ET AL,<br>DEFENDANTS | §<br>§<br>§ | JURY TRIAL DEMANDED |

## DEFENDANT'S RESPONSES TO ADMISSIONS

TO: Rowland J. Martin Jr.

1. That your firm, McKnight and Bravenec, made appearances through Edward Bravenec as the legal representative for Rowland Martin in Administrator of Estate of King v. Lawrence Webb in Bexar County small claims court.

   *Deny*

2. The principals of the Law Office of McKnight and Bravenec made appearances through Albert McKnight as the legal representative for Rowland Martin in <u>Guillen v. Martin</u>.

   *Admit*

3. The principals of the Law Office of McKnight and Bravenec were attorneys of record and counselors at law, and made appearances through Edward Bravenec and Albert McKnight, as legal representatives of the Administrator and the estate in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1.

   *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

4. Albert McKnight withdrew from duties in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1 with formal leave of the probate court.

   *Admit*

5. Edward Bravenec withdrew from duties as attorney for the administrator and estate in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1 without formal leave of the probate court.

   *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

14-50093.557

6.  The order of the Bexar County Probate Court #1 pertaining to Albert McKnight does not refer to Edward Bravenec.

    *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

7.  The purpose of the withdrawal executed by McKnight and Bravenec was to pursue a business opportunity you discovered during a confidential relationship.

    *Deny*

8.  The confidential relationship between McKnight and Bravenec and Rowland Martin was originally legal in nature.

    *Objection. Unable to admit or deny. Please clarify question.*

9.  The confidential relationship between McKnight and Bravenec and Rowland Martin that was originally legal in nature became financial in nature when the former were consulted about debt collection irregularities concerning 1216 West Ave in April and May 2005.

    *Objection. Unable to admit or deny because the question is vague and unclear.*

10. The confidential relationship between McKnight and Bravenec and Rowland Martin that was originally legal in nature became financial in nature when the former executed a loan agreement of your client Rowland Martin was the guarantor, and advised that the loan should amounts to fund tax payments to the Bexar County Tax Assessor Collector.

    *Objection. Unable to admit or deny because the question is vague and unclear.*

11. The confidential relationship between McKnight and Bravenec and Rowland Martin and debt collection consultation in April and May 2005 were the source of your knowledge about the business opportunity involving 1216 West Ave.

    *Objection. Unable to admit or deny because the question is vague and unclear.*

12. The principals of the Law Office of McKnight and Bravenec posed for foreclosure in January 2006 in the Chapter 13 bankruptcy case., In Re Rowland Martin, Case No. 05-08116, in the U.S. Bankruptcy Court for the Western District of Texas.

    *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

13. The principals of the Law Office of McKnight and Bravenec posted for foreclosure in April 2006 in the Chapter 13 bankruptcy case., In Re Rowland Martin, Case No. 05-80116, in the U.S. Bankruptcy Court for the Western District of Texas

14-50093.558

*Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

14. The principals of the Law Office of McKnight and Bravenec executed a one party trustee's sale in May 2006 that was set aside by the U.S. Bankruptcy Court for the Western District of Texas.

*Objection. Cannot admit or deny with regards to date. However, admit with respect to deed that was set aside.*

15. The legal theory of the Law Office of McKnight and Bravenec disavows the guarantorship provisions of the loan agreement and second lien note agreement with Moroco Ventures and Rowland Martin.

*Objection. Unable to admit or deny because the question is vague or unclear.*

16. The effect of the legal theory of the Law Office of McKnight and Bravenec in disavowing the guarantorship provisions of the loan agreement and second lien note agreement with Moroco Ventures and Rowland Martin is to obstruct Rowland Martin's standing to assert a personal right of action against the Law Office of McKnight and Bravenec.

*Objection. Unable to admit or deny because the question is vague or unclear.*

17. Rowland Martin was not a party to the settlement between Reliant Financial, et al, and McKnight and Bravenec, et al.

*Objection. Unable to admit or deny because the question is vague or unclear.*

18. Ricardo Briones, attorney for defendants Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Ave. Inc., conferred with Joyce Keating during the week of February 28, 2011 but did not confer with Plaintiff Rowland Martin

19. Edward Bravenec and Albert McKnight did not swindle Rowland Martin

*Admit*

19. Edward Bravenec and Albert McKnight trespassed on title to the property at 1216 West Ave, took possession of the property at 1216 West Ave. and took possession of money representing the owners equity in Moroco Ventures, without the consent of Moroco Ventures and its special owner, Rowland Martin.

*Deny*

14-50093.559

Ricardo Briones
McKnight & Bravenec
1216 West Avenue
San Antonio, TX 78201
(210) 223-4080
SBN: 24062635

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Defendant's Response to Admissions was served on Rowland Martin via ~~fax~~ this 22ⁿᵈ day of March, 2011.

Ricardo Briones

Certified mail

14-50093.560

Document scanned as filed.



2014CI07644 -D285

Cause No. 2014- CI - 07644

EDWARD L. BRAVENEC AND 1216 WEST AVE., INC.

Plaintiff

VS.

ROWLAND MARTIN, JR.
Defendants

§
§
§
§
§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURT

285ᴸ JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

## TEMPORARY RESTRAINING ORDER

On this day came to be heard the Verified Application for Temporary Restraining Order (the "Application") filed by Edward Bravenec and 1216 West Ave., Inc. After hearing the argument of counsel and having considered the Verified Petition and Application, it clearly appears to the Court that Plaintiffs are entitled to a Temporary Restraining Order and that the Court is of the opinion that a Temporary Restraining Order should be issued.

Therefore, it is the ORDER of this court that Rowland J. Martin, his agents, employees and all those acting in concert with him, including, without exception, the Bexar County Clerk, is hereby enjoined from filing any document whatsoever with the Bexar County Clerk's Deed Records Office in any way related to Plaintiffs or the real property described as

New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet &
Lots 2 & 3; commonly referred to as 1216 West Ave., San Antonio, Texas

It is FURTHER ORDERED that the Bexar County Clerk cancel, expunge, or otherwise render ineffective the document filed by Rowland J. Martin, Jr., entitled "Notice of Apparent Liability for Purchase Money Claims" recorded at Book 16601, Page 2158.

27 Defendants are ORDERED to appear before the Presiding District Court of Bexar County on the 26 day of _____May_____, 2014 at 9:00 a.m. and show cause as to why this Temporary Restraining Orders should not be made permanent as an injunction.

Plaintiff's bond is hereby set at $ 500.00 , cash or surety. The clerk of the court is to issue notice to Defendant of this order and hearing and the hearing scheduled for injunction. Notice may be accomplished by fax, personal service, or private process.

Witness my hand this 14 day of May, 2014, at 9:00 PM.

_____
Honorable Judge Presiding



2014CI07644 -100007

CAUSE NO: 2014-CI-07644

| | | |
|---|---|---|
| EDWARD BRAVENEC AND 1216 WEST AVE., INC. | § § § | IN THE DISTRICT COURT |
| VS. | § § | 285TH JUDICIAL DISTRICT |
| ROWLAND MARTIN, JR. | § § § | BEXAR COUNTY, TEXAS |
| | § | |
| ROWLAND MARTIN, JR. | § § | |
| VS. | § § | |
| EDWARD BRAVENEC, AND THE LAW OFFICE OF MCKNIGHT AND BRAVENEC | § § § | |

## MOTION FOR ENFORCEMENT AND FOR CONTEMPT

COMES NOW, Edward L. Bravenec, Plaintiff in the above entitled and numbered cause and files this Motion for Enforcement and for Contempt against Rowland Martin, Jr. and would show the Court as follows:

1. Respondent Rowland J. Martin, Jr. may be served with process at 951 Lombrano San Antonio, Texas 78207. Citation and personal service is requested.

2. This case has a long and checkered history. Rowland Martin, Jr. has no respect for any of the orders of any court and intentionally violates the same to disrupt the property rights of the Plaintiffs.

3. Plaintiff's are the legal owners of the property located at 1216 West Avenue, San Antonio, Bexar County, Texas (the"Property"). This case has literally been to every court.

4. On October 03, 2003 Edward L. Bravenec and 1216 West Avenue, Inc. rightfully

foreclosed on the Property known as 1216 West Avenue. Rowland Martin, Jr. did in Cause No. 2006-CI-15329 filed in District Court Bexar County, Texas attempted to stop the sale of the Property by 1216 West Avenue by filing a restraining order and Temporary Injunction. On November 01, 2006 in Cause No. 2006-CI-15329 filed in the 57th Judicial District of Bexar County, Texas the court found that there were no irregularities in the foreclosure of the Property, that Rowland Martin, Jr. had no right to intervene to stop the sale and the foreclosure placing and finding the same was valid.

5.    Losing at District Counsel level, again Rowland Martin, Jr. attempted to interfere with the sale of the Property by filing in federal court civil case no. SA-11-CV-00414 styled *Rowland Martin, Jr. et al v. Charles Grehn, Edward L. Bravenec, 1216 West Avenue, Inc.* Throughtout this suit numerous Lis Pendens were filed to prevent sale of the Property. Eventually a judgment was entered in favor of Edward L. Bravenenc and 1216 West Ave., Inc. The federal court entered an order on February 01, 2013 which summarized the actions of Rowland Martin, Jr. in which the Honorable Judge Hudspeth found that:

> "The court observes that for years Plaintiff (Rowland Martin, Jr.) had engaged in a campaign harassing, frivolous and duplicative litigation. His lawsuits have served no purpose of than to increase the litigation cost of the Defendant's and waste judicial resources. The court finds that it is necessary to take some action to curtail the Plaintiff's propensity to burden the court with meritless litigation. No one, rich or poor, is entitled to abuse the judicial process *Harwick v. Brinson 523f 2d 798, 800 (5th Circuit 1975)*

6.    Rowland J. Martin, Jr. took this matter to the 5th Circuit. The orders of the District Court were affirmed and his appeal was dismissed.

7.    In addition, Judge Hudspeth entered an order regarding a Motion for Summary Judgement in Cause No. SA- 11-CI-414. Like wise as in this suit, all the causes of action arise out of allegations that occurred between 2003 and at the latest 2006. The court found all of the

2

claims are frivolous. The court specifically found that:

> " Never the less, the court is considering imposing sanctions sua sponte against the Plaintiff (Rowland J Martin Jr.) for violating his Rule 11(b) obligations. The court has determined that Plaintiff is likely violated Rule 11(b) by (i) Repeatedly filing lawsuits for the purpose of harassment and the needless increase of litigation cost and (ii.) Continuing to assert claims that he knows are non meritorious Id.11(b) (1)(2). Therefore, the court will require Plaintiff to show cause why monetary sanctions should not be opposed against him for violation of Rule 11.

8.    Monetary sanctions were imposed. Despite these orders, the Plaintiff Rowland J Martin Jr. continued to file Lis Pendens against the Property to encumber the title and prevent its sale.

9.    On October 25, 2013 Judge Hudspeth again intervened by entering an order canceling Lis Pendens. See Exhibit "G"

10.    On February 21, 2014 Judge Hudspeth entered a second order as Martin continued to file notices of Lis Pendens and refused to cancel the same. Now, however Martin indicated that the Probate of the Estate of Johnny May King in cause no. 2001-PC-1263 somehow affected the estate.

11.    On December 05, 2013 Judge Hudspeth entered an order granting sanctions in favor of 1216 West Avenue Inc and Edward L Bravenec and against Rowland Martin because of "his vexatious pursuit of harassing and frivolous litigation".

12.    Judge Hudspeth now referred all claims associated with the Estate of Johnny May

3

King back to the Probate Court for adjudication.

13.     On March 19, 2014 the Honorable Judge Polly Jackson Spencer entered an order in Cause No. 2001-PC-1263, the probate case, canceling the notice of Lis Pendens filed on or about December 03, 2013 and the further notice of Lis Pendens filed on or about March 07, 2014 with regard to the Property 1216 West Avenue declaring both to be canceled null and void..

14.     With the Lis Pendens cancelled by the Probate Court, Edward L Bravenec and 1216 West Avenue, Inc. located a purchaser for the Property. Full well knowing the lengthy, vexatious and harassing litigation tactics of Rowland J Martin Jr., Edward L Bravenec and 1216 West Avenue, Inc filed a Petition and Application for Temporary Restraining Order setting forth the facts and filing a suit for tortious interference with contractual relations against Rowland J Martin Jr. The court granted a temporary restraining order on May 14,2014 setting the hearing for the Temporary Injunction for May 23, 2014 at 9:00 a..m. The hearing was held on May 23, 2014.

15.     Rowland J. Martin, Jr. was not represented by counsel and appears pro se. He was served and answered prior to the scheduled hearing. Movants request this court take judicial notice of the file.

16.     Initially Rowland J. Martin, Jr. did not attend the hearing. Evidence was presented on the record and after hearing evidence an order was entered granting the Temporary Injunction. At the conclusion of the hearing Rowland J Martin Jr. appeared and, the order was withdrawn based on an agreement reached between the parties. The agreement was conformed in the

4

record. Rowland J Martin Jr. requested a continuance to July 09, 2014 but agreed that the Temporary Restraining Order would remain in full force and effect. Rowland J. Martin Jr. filed an answer and counter claim.

17. Despite the Temporary Restraining Order remaining in full force in effect by agreement, Rowland J Martin Jr. once again filed a notice of Lis Pendens against the Property preventing the closing of the sale. This notice was not sent to counsel of record Glenn J Deadman. It was sent to the Buyers of 1216 West Ave and their realtor.

18. Specifically, Rowland J Martin Jr. violated the Temporary Restraining Order by filing a document with the Bexar County Clerk Deeds Record's Office that relates to the Plaintiff's and the real property described as NCB 8806BLK 50 LOT 1, EXC NW 10.01 FT & 2-3

19. Plaintiff requests that Rowland J Martin Jr be held in contempt, jailed and fined for each separate violation alleged above for violating this Court's order. Therefore Plaintiff requests that:

a) This Court enter a Show Cause Order requiring Rowland J Martin Jr. to appear at a time and place to be set by the Court,

b) Following the hearing that the Court find that Rowland J. Martin Jr. be held in contempt of Court and otherwise sentenced to not more than six (6) months and punished accordingly, if while incarcerated Rowland J. Martin, Jr. continued to

5

contact lawyers, title companies, lenders or file any document that clouds the title to the Property, for each additional offense Rowland J. Martin, Jr. be jailed for six months.

c)     for appropriate sanctions, not to exceed $500.00 per offense.

d)     for attorney's fees, and

e)     for such other and further relief to which Edward L. Bravenec and 1216 West Avenue, Inc. may be justly entitled.

REQUEST FOR ATTORNEY'S FEES

Plaintiff was required to retain the services of Glenn J. Deadman, P.C., in order to file and argue this matter. Plaintiff is entitled and seek to recover from Defendant, in addition to the relief pled for above, its reasonable and necessary attorney's fees for having to pursue this Motion for Enforcement and for Contempt.

WHEREFORE, PREMISES CONSIDERED, Edward L. Bravenec and 1216 West Avenue, Inc. respectfully request that citation and notice issue as required by law and that the Court enter its orders in accordance with the allegations contained in this motion. Plaintiff prays for attorney's fees, expenses and costa as requested above and for any and all relief in equity and in law that

6

Plaintiff has shown itself justly entitled.

Respectfully submitted,

GLENN J. DEADMAN, P.C.
509 S. Main Avenue
San Antonio, TX 78204
(210) 472-3900-Telephone
(210) 472-3901-Facsimile
*gjdeadman@aol.com*

Glenn J. Deadman
SBN: 00785559

## CERTIFICATE OF SERVICE

I, the undersigned, hereby swear that the foregoing Motion for Enforcement and for Contempt was served on Defendant Rowland J. Martin, Jr. via personal service.

Rowland J. Martin, Jr.
951 Lombrano
San Antonio, Texas 78207
210-323-3849

Glenn J. Deadman

7

STC GF# 1402942377

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# WARRANTY DEED WITH VENDOR'S LIEN

STATE OF TEXAS       §
                              §   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF BEXAR      §

THAT, **EDWARD L. BRAVENEC**, hereinafter called Grantor (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable considerations in hand paid by **TORRALBA PROPERTIES, LLC**, hereinafter called Grantee (whether one or more), whose mailing address is:_____ 18507 Canoe Brook _____
_____ San Antonio, TX 78258 _____, the receipt of which is hereby acknowledged, and for the further consideration of the sum of **$239,200.00**, to Grantor in hand paid by **PROSPERITY BANK**, which amount is advanced at the special instance and request of the Grantee herein, and as evidence thereof, the Grantee has executed and delivered one certain promissory note of even date herewith for the sum of **TWO HUNDRED THIRTY NINE THOUSAND TWO HUNDRED AND NO/100 DOLLARS ($239,200.00)**, payable to the order of **PROSPERITY BANK**, whose mailing address is as set forth in the hereinafter mentioned Deed of Trust, bearing interest and payable as in said note provided; said note containing the usual provisions for attorney's fees and acceleration of maturity in case of default, and being secured by Vendor's Lien herein and hereby expressly retained in favor of the Grantor, on the property hereinafter described, and as further security for the payment of said note, the SUPERIOR TITLE and VENDOR'S LIEN to said property are hereby transferred and conveyed to **PROSPERITY BANK** without recourse against Grantor, said note being also secured by Deed of Trust of even date herewith to **DAVID ZALMAN**, Trustee; has GRANTED, SOLD and CONVEYED and by these presents Grantor does hereby GRANT, SELL and CONVEY unto Grantee herein, the following described real property together with all improvements thereon situated in Bexar County, Texas, described as follows, to-wit:

> **Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 105, Pages 284-286, Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT 0.00049 of an acre, being 21.51 square feet out of Lot 1, as described by Deed to the City of San Antonio recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas; and**

> **Lots 23, 24 and 25, Block 50, New City Block 8806, LOS ANGELES HEIGHTS SUBDIVISION, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 8100, Page 97, Deed and Plat Records of Bexar County, Texas.**

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto the said Grantee herein, Grantee's heirs, successors and/or assigns forever. And Grantor does hereby bind Grantor, Grantor's heirs, successors and/or assigns, TO WARRANT and FOREVER DEFEND all and singular the said premises unto the Grantee herein, Grantee's heirs, successors and/or assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Grantee assumes taxes for the current year on the property hereby conveyed.

This conveyance and the warranties of title given herein are made subject to any and all restrictions, easements, setback lines, covenants, conditions and reservations, of record affecting the property herein conveyed.

1216 West Ave., San Antonio, Texas 78201

EXECUTED ON THE FOLLOWING DATE: _____**JUL 0 8 2014**_____.

_____
EDWARD L. BRAVENEC

(ACKNOWLEDGEMENT)

STATE OF TEXAS          §
COUNTY OF BEXAR      §

This instrument was ACKNOWLEDGED before me, on this the ___8___ day of _____, 20_14_, by EDWARD L. BRAVENEC.

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Torralba Properties, LLC
18507 Canoe Brook,
San Antonio, Texas 78258

PREPARED IN THE OFFICE OF:
WEST & WEST ATTORNEYS, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230

1216 West Ave., San Antonio, Texas 78201

Doc# 20140116444
# Pages 3
07/11/2014   11:13AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $30.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
07/11/2014   11:13AM
COUNTY CLERK, BEXAR COUNTY TEXAS



DOCUMENT SCANNED AS FILED



2014CI07644 -0285

Cause No.2014-CI-07644

| | | |
|---|---|---|
| EDWARD L. BRAVENEC AND 1216 WEST AVE., INC. *Plaintiff* | § § § § § § | IN THE DISTRICT COURT |
| VS. | § § § § | 285TH JUDICIAL DISTRICT |
| ROWLAND MARTIN, JR. *Defendants* | § § § | BEXAR COUNTY, TEXAS |
| | § | |

## TEMPORARY INJUNCTION

On this day came to be heard the Verified Application for Temporary Restraining Order (the "Application") filed by Edward Bravenec and 1216 West Ave., Inc. After hearing the argument of counsel and having considered the Verified Petition and Application and the evidence presented, it clearly appears to the Court that Plaintiffs are entitled to a Temporary Injunction and that the Court is of the opinion that a Temporary Injunction should be issued. This Court specifically finds that Courts have already determined that the rightful owner of the Property is Edward L Bravenec. This Court further finds that in Federal Court Cause No. SA-11-CI-414 styled *Rowland J. Martin, Jr. et al. v. Charles Grehn et al.* the Court found that legal and equitable title to the Property was vested in Edward L Bravenec and further that neither Rowland J Martin, Jr. nor the company he owned, Morocco Ventures, LLC or any successor in interest there to had any interest, legal or equitable, in the Property described as:

"New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet & Lots 2 & 3; which property is commonly referred to as 1216 West Ave., San Antonio, Texas" the ("Property")

This Court further finds that despite judgments being rendered against Rowland J. Martin, Jr. that he continues to interfere and cloud the title to the Property or contact potential buyers and title companies to disrupt or disturb any potential sale of the Property by its rightful owner. Rowland J. Martin, Jr. has a history which is documented in the aforementioned federal court case and the subsequent appeal to the Fifth Circuit Court of Appeals in which both courts find his filings to be vexatious and frivolous. But for the temporary injunction, it is likely that his conduct is to continue and the damage to the Plaintiff's in this case would be irreparable and could not be compensated by monies.

07/31/2014 Vol 4267 pg 0136



2014CI07644 -100092

DOCUMENT SCANNED AS FILED

Therefore, it is the ORDER of this court that Rowland J. Martin, any entity at his request or under his control, his agents, employees and all those acting in concert with him, are hereby enjoined from filing any document whatsoever with this court, any other court, the Bexar County Clerk's Deed Records Office that in any way relates to Plaintiffs or the real property described as

New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet & Lots 2 & 3; commonly referred to as 1216 West Ave., San Antonio, Texas (the "Property")

It is FURTHER ORDERED that the Bexar County Clerk cancel, expunge, or otherwise render ineffective any document filed by Rowland J. Martin, Jr., entitled "Notice of Apparent Liability for Purchase Money Claims" recorded at Book 16601, Page 2158, "Perfected Lis Pendens" or any like titled document.

It is FURTHER THE ORDER of this court that Rowland J. Martin, Jr., any entity at his request or under his control, his agents, employees and all those acting in concert with him are hereby enjoined from contacting any title company, any potential buyer, bank or otherwise interfering with the potential sale of the Property in any manner whatsoever,

It is FURTHER ORDERED that Rowland J Martin, Jr. is prohibited from joining any third parties or additional defendants to this suit without prior approval of this court.

It is FURTHER ORDERED that this matter be set for trial on the merits on the __8th__ day of December, 2014 at 9:00 a.m.

Plaintiff's bond is hereby set at $500.00, cash or surety. The clerk of the court is to issue notice to Defendant of this order and hearing and the hearing scheduled for injunction. Notice may be accomplished by fax, personal service, or private process.

Witness my hand this __17th__ day of July, 2014, at __8:50 A.M.__

Honorable Judge Presiding

APPROVED AS TO FORM:

Glenn J Deadman
509 South Main Ave
San Antonio, Texas 78204
210-472-3900
gjdeadman@aol.com

Rowland J Martin Jr
Pro Se
951 Lombrano
San Antonio, Texas 78207